George Hofmann (10005)
Jeffrey L. Trousdale (14814)
Emma L.A. Grissom (19552)
**Cohne Kinghorn, P.C.**
111 East Broadway, 11th Floor
Salt Lake City, Utah 84111
Telephone: (801) 363-4300
Facsimile: (801) 363-4378

Attorneys for TW Medical Group, LLC

Ted F. Stokes (14891)
**Stokes Law PLLC**
2072 North Main Suite 102
North Logan, Utah 84341
Telephone: (435) 213-4771
Facsimile: (888) 441-1529

Attorneys for
Taylor G. Wright, P.C.

---

## IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re<br><br>TW MEDICAL GROUP, LLC and<br><br>TAYLOR G. WRIGHT, P.C.,<br><br>Debtors. | Jointly Administered under<br>Case No. 24-25495 (JTM)<br><br>Chapter 11<br><br>**THIS DOCUMENT RELATES TO:**<br>☐ In re TW Medical Group, LLC<br>☐ In re Taylor G. Wright, P.C.<br>☑ Both Debtors |

**PLAN OF REORGANIZATION**

Dated: February 20, 2025

TW Medical Group, LLC and Taylor G. Wright, P.C., debtors-in-possession in the above-captioned jointly administered bankruptcy case, hereby propose the following joint plan of reorganization under Section 1121 of Title 11 of the United States Code. The following shall constitute a separate plan of reorganization proposed by each of the foregoing debtors.


# ARTICLE I

## DEFINITIONS AND CONSTRUCTION OF TERMS

For purposes of this Plan, the following terms shall have the meanings specified in this Article I. A term used but not defined herein, which is also used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code. Wherever from the context it appears appropriate, each term stated shall include both the singular and the plural, and pronouns shall include the masculine, feminine and neuter, regardless of how stated. The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular Section, sub-Section or clause contained in the Plan. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the terms of this Plan. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

"Administrative Expense Claim" shall mean a Claim that is Allowed under Section 503(b) of the Bankruptcy Code and that is entitled to priority under Section 507(a)(1) of the Bankruptcy Code, including, without limitation,

(a)     fees and expenses of Professionals Allowed pursuant to an Order of the Bankruptcy Court, and

(b)     all fees and charges assessed against the Estate pursuant to 28 U.S.C. § 1930.

"Allowed" shall mean, with reference to any Claim:

(a)     a Claim that has been listed by the Debtors in their Schedules and (i) is not listed as disputed, contingent or unliquidated, and (ii) is not a Claim as to which a proof of claim has been filed;

(b)     a Claim as to which a timely proof of claim has been filed by the Bar Date and either (i) no objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery, has been made on or before any applicable deadline, or (ii) if an objection thereto, or application to estimate, equitably subordinate or otherwise limit recovery has been interposed, the extent to which such Claim has been allowed (whether in whole or in part) by a Final Order;

(c)     a Claim arising from the recovery of property under Section 550 or 553 of the Bankruptcy Code and allowed in accordance with Section 502(h) of the Bankruptcy Code; or

(d)     any Claim expressly allowed under this Plan or pursuant to the Confirmation Order.

"Amur" shall mean Amur Equipment Finance.

"Avoidance Actions" shall mean Causes of Action arising or held by the Estates under Sections 502, 510, 541, 544, 545, 547, 548, 549, or 550 of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfer laws.

"Bankruptcy Cases" shall mean the Debtors' above-captioned cases jointly administered in the Bankruptcy Court under case number 24-25495.

"Bankruptcy Code" shall mean Title 11 of the United States Code, as amended from time to time, as applicable to the Bankruptcy Case.

"Bankruptcy Court" shall mean the United States Bankruptcy Court for the District of Utah in which the Bankruptcy Case is pending and, to the extent of any reference under 28 U.S.C. § 157, the unit of such District Court specified pursuant to 28 U.S.C. § 151.

"Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure as promulgated under 28 U.S.C. § 2075, and any local rules of the Bankruptcy Court.

"Bar Date" shall mean: (i) February 19, 2025 with respect to a Claim against the Estates other than a Claim of a Governmental Unit; and (ii) April 21, 2025 with respect to a Claim of a Governmental Unit against the Estates.

"Business Day" shall mean any day other than a Saturday, Sunday or legal holiday recognized in the State of Utah.

"Cash" shall mean lawful currency of the United States of America (including wire transfers, cashier's checks drawn on a bank insured by the Federal Deposit Insurance Corporation, certified checks and money orders).

"Causes of Action" shall mean, without limitation, any and all actions, causes of action, defenses, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments, Claims or proceedings to recover money or property and demands of any nature whatsoever, whether known or unknown, in law, equity or otherwise, including, without limitation, Avoidance Actions.

4916-0589-5961, v. 2

"Claim" shall mean a claim against a Person or its property as defined in Section 101(5) of the Bankruptcy Code, including, without limitation, (i) any right to payment, whether or not such right is reduced to judgment, and whether or not such right is liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (ii) any right to an equitable remedy for breach of performance, if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, or is fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

"Class" shall mean those classes designated in Article III of this Plan.

"Collateral" shall mean any property or interest in property of the Estates subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law.

"Confirmation Date" shall mean the date on which the clerk of the Bankruptcy Court enters the Confirmation Order on the docket in the Bankruptcy Case.

"Confirmation Order" shall mean the order of the Bankruptcy Court confirming the Plan pursuant to the provisions of the Bankruptcy Code, and any supplementary orders of the Bankruptcy Court issued in furtherance of the Plan.

"Contingent or Unliquidated Claim" shall mean any Claim for which a proof of claim has been filed with the Bankruptcy Court but which was not filed in a sum certain, or which has not occurred and is dependent upon a future event that has not occurred or may never occur, and which has not been Allowed.

"Convenience Claims A" shall mean all General Unsecured Claims of a single holder of a type which would otherwise be included in Class 4 which are either (i) $3,072.43 or less in the aggregate; or (ii) greater than $3,072.43 in the aggregate but as to which the holder thereof has elected voluntarily to reduce to $3,072.43 by making a Convenience Class A Election.

"Convenience Claims B" shall mean all General Unsecured Claims of a single holder of a type which would otherwise be included in Class 4 which are either (i) $10,425.01 or less in the aggregate; or (ii) greater than $10,425.01 in the aggregate but as to which the holder thereof has elected voluntarily to reduce to $10,425.01 by making a Convenience Class B Election.

"Cucumber" shall mean Cucumber Capital, LLC.

"CVB" shall mean Cache Valley Bank.

"Debtor" or "Debtors" shall mean and refer to, singularly or collectively as the context may require, TW Medical Group, LLC and Taylor G. Wright, P.C. and, from and after the Effective Date, shall mean and refer to the Reorganized Debtors.

3

"Disclosure Statement" shall mean the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, in the form approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code.

"Disputed Claim" shall mean:

(a)     if no proof of claim relating to a Claim has been filed, a claim that is listed in the Schedules as unliquidated, disputed or contingent; or

(b)     if a proof of claim relating to a Claim has been filed, a Claim as to which a timely objection or request for estimation, or request to equitably subordinate or otherwise limit recovery in accordance with the Bankruptcy Code and the Bankruptcy Rules, has been made, or which is otherwise disputed by the Debtors in accordance with applicable law, which objection, request for estimation, action to limit recovery or dispute has not been withdrawn or determined by Final Order; or

(c)     a Claim which is a Contingent or Unliquidated Claim.

"Disputed Claim Amount" shall mean the amount set forth in the proof of claim relating to a Disputed Claim or an amount estimated pursuant to an order of the Bankruptcy Court in respect of a Disputed Claim in accordance with Section 502(c) of the Bankruptcy Code.

"Disputed Claims Reserve" shall have the meaning set forth in Section 6.5 hereof.

"Distribution Date" shall mean fourteen (14) days after the last day of each full Quarter following the Effective Date, up to and including the Final Distribution Date, or if the fourteenth day following the last day of any Quarter is not a Business Day, the first Business Day immediately thereafter.

"Distribution Record Date" shall mean the Confirmation Date.

"Effective Date" shall mean the date which is 30 days after the Confirmation Date, or if such date is not a Business Day, the next succeeding Business Day; provided, however, that if, as of such date, all conditions precedent to the occurrence of the Effective Date set forth in Section 9.1 of the Plan have not been satisfied or waived, then the Effective Date shall be the first Business Day immediately following the day upon which all such conditions have been satisfied or waived.

"Equity Interest" shall mean any membership interest or the interest of any holder of common or preferred equity securities of either of the Debtors or of any general or limited partnership interest in either of the Debtors, and all options, warrants and rights, contractual or otherwise, to acquire any such equity securities or to acquire any general or limited partnership interest in either of the Debtors, as such interests exist immediately prior to the Effective Date.

4916-0589-5961, v. 2

"Estate" or "Estates" shall mean the respective estates of the Debtors arising pursuant to Section 541 of the Bankruptcy Code.

"FCB" shall mean First Citizens Bank.

"Final Distribution Date" shall mean the earlier of (i) the Distribution Date immediately following the six-year anniversary of the Effective Date; or (ii) the last Distribution Date by which the Plan Payments have been distributed in full.

"Final Order" shall mean an order or judgment which has not been reversed, stayed, modified or amended and as to which (i) the time to appeal or seek review or rehearing has expired and as to which no appeal or petition for certiorari, review or rehearing is pending, or (ii) if appeal, review, reargument or certiorari of the order has been sought, the order has been affirmed or the request for review, reargument or certiorari has been denied and the time to seek a further appeal, review, reargument or certiorari has expired, and as a result of which such order shall have become final and nonappealable in accordance with applicable law; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed with respect to such order shall not cause such order not to be a Final Order.

"General Unsecured Claim" shall mean a Claim that is not a Secured Claim or that is not entitled to priority of payment under Section 507 of the Bankruptcy Code, other than Convenience Claims A and Convenience Claims B.

"Initial Distribution Date" shall mean the Distribution Date first occurring after the Effective Date.

"Interim Distribution Date" shall mean each Distribution Date other than the Final Distribution Date.

"IPFS" shall mean IPFS Corporation.

"JB&B" shall mean JB&B Capital, LLC.

"Lien" shall have the meaning set forth in Section 101(37) of the Bankruptcy Code; except that a Lien that has been avoided in accordance with Sections 544, 545, 546, 547, 548, 549 or 553 of the Bankruptcy Code shall not constitute a Lien.

"Person" shall mean any individual, corporation, partnership, joint venture, association, joint-stock company, trust, unincorporated association or organization, Governmental Unit or political subdivision thereof.

"Petition Date" shall mean October 23, 2024.

4916-0589-5961, v. 2

"Plan" shall mean this Plan of Reorganization, including, without limitation, the exhibits, supplements, appendices and schedules hereto, either in their present form or as the same may be altered, amended or modified from time to time.

"Plan Rate" shall mean the interest rate determined pursuant to 28 U.S.C. § 1961 as of the Petition Date.

"Prime Rate" shall mean the per annum rate of interest published on the Petition Date in the Wall Street Journal, under the section entitled "Money Rates," denoted as the United States "Prime Rate," which is 7.5% for the purpose of this Plan.

"Priority Claims" shall mean any and all Claims (or portions thereof), if any, entitled to priority under Section 507(a) of the Bankruptcy Code other than Administrative Expense Claims.

"Priority Tax Claims" shall mean any Claim of a Governmental Unit entitled to priority under Section 507(a)(8) of the Bankruptcy Code, and including, without limitation, any such Claims which are Secured Claims.

"Pro Rata" shall mean a proportionate share of the total distribution made at any particular time under this Plan to the holders of Allowed Claims in a Class, such that the ratio of the consideration distributed on account of an Allowed Claim in a Class to the amount of such Allowed Claim is the same as the ratio of the amount of the consideration distributed on account of all Allowed Claims in such Class to the total of all Allowed Claims in such Class.

"Professionals" shall mean (i) those Persons employed pursuant to an order of the Bankruptcy Court in accordance with Sections 327 or 1103 of the Bankruptcy Code and to be compensated for services pursuant to Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (ii) those Persons for which compensation and reimbursement is allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

"QC" shall mean Quick Capital.

"Quarter" means and refers to the calendar quarters ending, respectively, on March 31, June 30, September 30 and December 31.

"Quarterly" means on the basis of once each calendar quarter.

"Reorganized Debtors" shall mean the Debtors, as reorganized after the Effective Date pursuant to the terms of this Plan.

"Rowan" shall mean Rowan Advance.

4916-0589-5961, v. 2

"Schedules" shall mean the schedules of assets and liabilities, the list of holders of interests and the statements of financial affairs filed by the Debtors under Section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists and statements have been or may be supplemented or amended from time to time.

"Secured Claim" shall mean any Claim that is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with Section 506(a) of the Bankruptcy Code, or, in the event that such Claim is a claim of setoff under Section 553 of the Bankruptcy Code, to the extent of such setoff.

"TGW" shall mean Debtor or Reorganized Debtor (as the context may require) Taylor G. Wright, P.C.

"TVT" shall mean TVT 2.0, LLC.

"TW Med" shall mean Debtor or Reorganized Debtor (as the context may require) TW Medical Group, LLC.

"US Bank" shall mean U.S. Bank N.A. d/b/a U.S. Bank Equipment Finance, aka Crest Capital.

"Vernon" shall mean Vernon Capital.

## ARTICLE II

## TREATMENT OF ALLOWED ADMINISTRATIVE EXPENSE CLAIMS AND ALLOWED PRIORITY TAX CLAIMS

**2.1** **Non-Classification**.  As provided in Section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims are not classified for the purposes of voting on, or receiving distributions under, the Plan.  All such Claims are instead treated separately in accordance with the terms in this Article II.

**2.2** **Administrative Expense Claims.**

(a)     General.  Except as otherwise agreed to by the Debtors and the holder of an Allowed Administrative Expense Claim, and subject to Section 2.2(c) below, each such holder shall be paid in full in Cash on the later of (i) the date such Allowed Administrative Expense Claim becomes due in accordance with its terms, and (ii) the Effective Date.  If the Debtors dispute any portion of an Administrative Expense Claim, the Debtors shall pay such Claim within 30 days after the entry of a Final Order with respect to the allowance of such disputed Administrative Expense Claim.

(b)     U.S. Trustee's Fees.  The United States Trustee's quarterly fees shall be paid in full without prior approval pursuant to 28 U.S.C. § 1930 on or before the Effective Date.

(c)    <u>Professional Compensation and Expense Reimbursement Claims</u>.

(1)    Each Professional shall file a final application for the allowance of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date within thirty (30) days after the Effective Date.  Any award granted by the Bankruptcy Court shall be paid (i) within fifteen days of the entry of the order of the Bankruptcy Court approving such award, unless a stay is obtained, or (ii) upon such other terms as may be mutually agreed upon between such holder of an Allowed Administrative Expense Claim and the Debtors.

(2)    All fees and expenses of Professionals for services rendered after the Effective Date in connection with the Bankruptcy Case and the Plan shall be paid by the Reorganized Debtors upon receipt of reasonably detailed invoices therefor in such amounts and on such terms as such Professional and the Debtors may agree, without the need for further Bankruptcy Court authorization or entry of a Final Order.

**2.3    Priority Tax Claims.**  At the sole election of the Reorganized Debtors, each holder of an Allowed Priority Tax Claim shall be paid either (i) upon such terms as may be agreed to between the Debtor and such holder of an Allowed Priority Tax Claim, (ii) in full in Cash on the later of (x) the Effective Date or (y) the date that such Allowed Priority Tax Claim would have been due if the Bankruptcy Case had not been commenced, or (iii) in equal quarterly installments commencing on the Initial Distribution Date, in the amount of such Allowed Priority Tax Claim, plus interest at the rate prescribed by Bankruptcy Code § 511, through and including the fifth anniversary of the Petition Date.

# ARTICLE III

## CLASSIFICATION OF CLAIMS

Claims, other than Administrative Expense Claims and Priority Tax Claims, shall be classified for all purposes, including voting on, confirmation of, and distribution pursuant to the Plan, as follows:

Class 1 – <u>Priority Claims</u>.  Class 1 shall consist of all Allowed Priority Claims, except for the Allowed Priority Tax Claims and Allowed Administrative Expense Claims.

Class 2 – <u>Allowed Secured Claim of CVB</u>.  Class 2 shall consist of the Allowed Secured Claim of CVB.

Class 3 – <u>Allowed Secured Claim of TVT</u>.  Class 3 shall consist of the Allowed Secured Claim of TVT.

Class 4 – <u>Allowed Secured Claim of JB&B</u>.  Class 4 shall consist of the Allowed Secured Claim of JB&B.

8

Class 5 – <u>Allowed Secured Claim of US Bank</u>.  Class 5 shall consist of the Allowed Secured Claim of US Bank.

Class 6 – <u>Allowed Secured Claim of IPFS</u>.  Class 6 shall consist of the Allowed Secured Claim of IPFS.

Class 7 – <u>Allowed Secured Claim of QC</u>.  Class 6 shall consist of the Allowed Secured Claim of QC.

Class 8 – <u>Allowed Secured Claim of Rowan</u>.  Class 8 shall consist of the Allowed Secured Claim of Rowan.

Class 9 – <u>Allowed Secured Claim of Vernon</u>.  Class 9 shall consist of the Allowed Secured Claim of Vernon.

Class 10 – <u>Allowed Secured Claim of Amur</u>.  Class 10 shall consist of the Allowed Secured Claim of Amur.

Class 11 – <u>Allowed Secured Claim of FCB</u>.  Class 11 shall consist of the Allowed Secured Claim of FCB

Class 12 – <u>Allowed Secured Claim of Cucumber</u>.  Class 12 shall consist of the Allowed Secured Claim of Cucumber.

Class 13 – <u>Miscellaneous Secured Claims</u>.  Class 13 shall consist of all Secured Claims not treated in Classes 2 through 12.

Class 14 – <u>General Unsecured Claims</u>.  Class 14 shall consist of all Allowed General Unsecured Claims against the Debtors.

Class 15 – <u>Convenience Claims A</u>.  Class 15 shall consist of all Allowed Convenience Claims A against the Debtor.

Class 16 – <u>Convenience Claims B</u>.  Class 16 shall consist of all Allowed Convenience Claims B against the Debtor.

Class 17 – <u>Equity Interests in TW Med</u>.  Class 17 shall consist of all Equity Interests in TW Med.

Class 18 – <u>Equity Interests in TGW</u>.  Class 18 shall consist of all Equity Interests in TGW.

4916-0589-5961, v. 2

## ARTICLE IV

## TREATMENT OF CLAIMS AND EQUITY INTERESTS

**4.1**    Class 1 – Priority Claims

(a)    Impairment and Voting.  Class 1 is impaired under the Plan.  The holders of Allowed Class 1 Claims shall be entitled to vote to accept or reject the Plan.

(b)    Payment.  The holders of Allowed Class 1 Claims shall be paid the full amount of their claim as of the Petition Date.  The holders of Allowed Class 1 Claims shall not be paid post-petition interest on their Claims.

(c)    Distributions.  Unless otherwise agreed by a holder of an Allowed Class 1 Claim, each holder of an Allowed Class 1 Claim shall receive Cash in an amount equal to such Allowed Class 1 Claim on or before the Interim Distribution Date.

**4.2**    Class 2 – Secured Claim of CVB

(a)    Impairment and Voting.  Class 2 is impaired under the Plan.  Each holder of an Allowed Secured Class 2 Claim shall be entitled to vote to accept or reject the Plan.

(b)    Treatment of Claim.  The Allowed Secured Class 2 Claim paid in full with interest at Prime Rate plus 1%.  The Reorganized Debtors will commence equal Quarterly payments to CVB on the Initial Distribution Date, and payments shall continue thereafter on a Quarterly basis until paid in full on the Final Distribution Date.

(c)    Retention of Collateral.  Except as otherwise ordered by the Court, the holder of the Allowed Secured Class 2 Claim shall retain its Lien in the Collateral securing the Class 2 Claim until its Allowed Secured Class 2 Claim is paid in full in accordance with this Section 4.2.

**4.3**    Class 3 – Secured Claim of TVT

(a)    Impairment and Voting.  Class 3 is impaired under the Plan.  Each holder of an Allowed Secured Class 3 Claim shall be entitled to vote to accept or reject the Plan.

(b)    Treatment of Claim.  The Allowed Secured Class 3 Claim paid in full with interest at Prime Rate plus 1%.  The Reorganized Debtors will commence equal Quarterly payments to TVT on the Initial Distribution Date, and payments shall continue thereafter on a Quarterly basis until paid in full on the Final Distribution Date.

(c)    Retention of Collateral.  Except as otherwise ordered by the Court, the holder of the Allowed Secured Class 3 Claim shall retain its Lien in the Collateral

4916-0589-5961, v. 2

securing the Class 3 Claim until its Allowed Secured Class 3 Claim is paid in full in accordance with this Section 4.3.

**4.4**     <u>Class 4 – Secured Claim of JB&B</u>

    (a)     <u>Impairment and Voting</u>.  Class 4 is impaired under the Plan.  Each holder of an Allowed Secured Class 4 Claim shall be entitled to vote to accept or reject the Plan.

    (b)     <u>Treatment of Claim</u>.  The Allowed Secured Class 4 Claim paid in full with interest at Prime Rate plus 1%.  The Reorganized Debtors will commence equal Quarterly payments to JB&B on the Initial Distribution Date, and payments shall continue thereafter on a Quarterly basis until paid in full on the Final Distribution Date.

    (c)     <u>Retention of Collateral</u>.  Except as otherwise ordered by the Court, the holder of the Allowed Secured Class 4 Claim shall retain its Lien in the Collateral securing the Class 4 Claim until its Allowed Secured Class 4 Claim is paid in full in accordance with this Section 4.4.

**4.5**     <u>Class 5 – Secured Claim of US Bank</u>

    (a)     <u>Impairment and Voting</u>.  Class 5 is impaired under the Plan.  Each holder of an Allowed Secured Class 5 Claim shall be entitled to vote to accept or reject the Plan.

    (b)     <u>Treatment of Claim</u>.  The Allowed Secured Class 5 Claim paid in full with interest at Prime Rate plus 1%.  The Reorganized Debtors will commence equal Quarterly payments to JB&B on the Initial Distribution Date, and payments shall continue thereafter on a Quarterly basis until paid in full on the Final Distribution Date.

    (c)     <u>Retention of Collateral</u>.  Except as otherwise ordered by the Court, the holder of the Allowed Secured Class 5 Claim shall retain its Lien in the Collateral securing the Class 5 Claim until its Allowed Secured Class 5 Claim is paid in full in accordance with this Section 4.5.

**4.6**     <u>Class 6 – Secured Claim of IPFS</u>

    (a)     <u>Impairment and Voting</u>.  Class 6 is impaired under the Plan.  Each holder of an Allowed Secured Class 6 Claim shall be entitled to vote to accept or reject the Plan.

    (b)     <u>Treatment of Claim</u>.  The Allowed Secured Class 6 Claim paid in full with interest at Prime Rate plus 1%.  The Reorganized Debtors will commence equal Quarterly payments to IPFS on the Initial Distribution Date, and payments shall continue thereafter on a Quarterly basis until paid in full on the Final Distribution Date.

4916-0589-5961, v. 2

(c)     Retention of Collateral.  Except as otherwise ordered by the Court, the holder of the Allowed Secured Class 6 Claim shall retain its Lien in the Collateral securing the Class 6 Claim until its Allowed Secured Class 6 Claim is paid in full in accordance with this Section 4.6.

**4.7**     Class 7 – Secured Claim of QC

(a)     Impairment and Voting.  Class 7 is impaired under the Plan.  Each holder of an Allowed Secured Class 7 Claim shall be entitled to vote to accept or reject the Plan.

(b)     Treatment of Claim.  The Allowed Secured Class 7 Claim paid in full with interest at Prime Rate plus 1%.  The Reorganized Debtors will commence equal Quarterly payments to QC on the Initial Distribution Date, and payments shall continue thereafter on a Quarterly basis until paid in full on the Final Distribution Date.

(c)     Retention of Collateral.  Except as otherwise ordered by the Court, the holder of the Allowed Secured Class 7 Claim shall retain its Lien in the Collateral securing the Class 4 Claim until its Allowed Secured Class 7 Claim is paid in full in accordance with this Section 4.7.

**4.8**     Class 8 – Secured Claim of Rowan

(a)     Impairment and Voting.  Class 8 is impaired under the Plan.  Each holder of an Allowed Secured Class 8 Claim shall be entitled to vote to accept or reject the Plan.

(b)     Treatment of Claim.  The Allowed Secured Class 8 Claim paid in full with interest at Prime Rate plus 1%.  The Reorganized Debtors will commence equal Quarterly payments to Rowan on the Initial Distribution Date, and payments shall continue thereafter on a Quarterly basis until paid in full on the Final Distribution Date.

(c)     Retention of Collateral.  Except as otherwise ordered by the Court, the holder of the Allowed Secured Class 8 Claim shall retain its Lien in the Collateral securing the Class 8 Claim until its Allowed Secured Class 8 Claim is paid in full in accordance with this Section 4.8.

**4.9**     Class 9 – Secured Claim of Vernon

(a)     Impairment and Voting.  Class 9 is impaired under the Plan.  Each holder of an Allowed Secured Class 9 Claim shall be entitled to vote to accept or reject the Plan.

(b)     Treatment of Claim.  The Allowed Secured Class 9 Claim paid in full with interest at Prime Rate plus 1%.  The Reorganized Debtors will commence equal Quarterly payments to Vernon on the Initial Distribution Date, and payments shall continue thereafter on a Quarterly basis until paid in full on the Final Distribution Date.

12

(c) <u>Retention of Collateral</u>.  Except as otherwise ordered by the Court, the holder of the Allowed Secured Class 9 Claim shall retain its Lien in the Collateral securing the Class 9 Claim until its Allowed Secured Class 9 Claim is paid in full in accordance with this Section 4.9.

**4.10** <u>Class 10 – Secured Claim of Amur</u>

(a) <u>Impairment and Voting</u>.  Class 10 is impaired under the Plan.  Each holder of an Allowed Secured Class 10 Claim shall be entitled to vote to accept or reject the Plan.

(b) <u>Treatment of Claim</u>.  The Allowed Secured Class 10 Claim paid in full with interest at Prime Rate plus 1%.  The Reorganized Debtors will commence equal Quarterly payments to Amur on the Initial Distribution Date, and payments shall continue thereafter on a Quarterly basis until paid in full on the Final Distribution Date.

(c) <u>Retention of Collateral</u>.  Except as otherwise ordered by the Court, the holder of the Allowed Secured Class 10 Claim shall retain its Lien in the Collateral securing the Class 10 Claim until its Allowed Secured Class 9 Claim is paid in full in accordance with this Section 4.10.

**4.11** <u>Class 11 – Secured Claim of FCB</u>

(a) <u>Impairment and Voting</u>.  Class 11 is impaired under the Plan.  Each holder of an Allowed Secured Class 11 Claim shall be entitled to vote to accept or reject the Plan.

(b) <u>Treatment of Claim</u>.  The Allowed Secured Class 11 Claim paid in full with interest at Prime Rate plus 1%.  The Reorganized Debtors will commence equal Quarterly payments to FCB on the Initial Distribution Date, and payments shall continue thereafter on a Quarterly basis until paid in full on the Final Distribution Date.

(c) <u>Retention of Collateral</u>.  Except as otherwise ordered by the Court, the holder of the Allowed Secured Class 11 Claim shall retain its Lien in the Collateral securing the Class 11 Claim until its Allowed Secured Class 11 Claim is paid in full in accordance with this Section 4.11.

**4.12** <u>Class 12 – Secured Claim of Cucumber</u>

(a) <u>Impairment and Voting</u>.  Class 12 is impaired under the Plan.  Each holder of an Allowed Secured Class 12 Claim shall be entitled to vote to accept or reject the Plan.

(b) <u>Treatment of Claim</u>.  The Allowed Secured Class 12 Claim shall be paid in accordance with the Settlement Agreement attached as Exhibit A.

(c)     Retention of Collateral.  Except as otherwise ordered by the Court, the holder of the Allowed Secured Class 12 Claim shall retain its Lien in the Collateral securing the Class 12 Claim until its Allowed Secured Class 12 Claim is paid in full in accordance with this Section 4.12.

**4.13**   Class 13 – Miscellaneous Secured Claims

(a)     Impairment and Voting.  Class 13 is impaired under the Plan.  Each holder of an Allowed Class 13 Claim shall be entitled to vote to accept or reject the Plan.

(b)     Payment.  Holders of Allowed Secured Class 13 Claims shall be paid, at the election of the Debtors, either:

(i) equal monthly installment payments totaling (a) the full amount of its Allowed Secured Claim [up to, but not exceeding, the value of its interest in the Collateral securing its Claim] as of the Petition Date, plus (b) interest from the Petition Date through the Effective Date at the rate of Prime Rate plus 1% per annum, less (c) any installment payments by the Debtor after the Petition Date, plus (d) interest from and after the Effective Date at the rate of Prime Rate plus 1% per annum; or

(ii) upon the sale of the Collateral securing its Allowed Claim, the net proceeds of such sale up to the amount of its Allowed Claim; or

(iii) the Debtors shall abandon such Collateral to the holder of the Class 13 Claim secured by such Collateral, and such holder shall be entitled to its Collateral in full satisfaction of its Secured Class 13 Claim.

(c)     Except as otherwise ordered by the Court, the holders of Allowed Secured Class 13 Claims shall retain their Liens in the Collateral securing their Claim(s) until their Allowed Secured Class 13 Claim(s) are paid in full.

**4.14**   Class 14 – General Unsecured Claims

(a)     Impairment and Voting.  Class 14 is impaired under the Plan.  Each holder of a General Unsecured Claim shall be entitled to vote to accept or reject the Plan.

(b)     Treatment of Claims.  Holders of General Unsecured Claims shall be paid in full with interest at the Plan Rate.  The Reorganized Debtors will commence equal Quarterly payments to Holders of General Unsecured Claims on the Initial Distribution Date, and payments shall continue thereafter on a Quarterly basis until paid in full on the Final Distribution Date.

4916-0589-5961, v. 2

**4.15**  Class 15 – Convenience Claims A

(a)  Impairment and Voting.  Class 15 is impaired under the Plan. Holders of Class 15 Claims shall be entitled to vote to accept or reject the Plan.

(b)  Distributions.  Each holder of an Allowed Convenience Claim A, in full and final satisfaction of such Claim, shall receive Cash in an amount equal to 75% of such Allowed Convenience Claim on the Initial Distribution Date, and shall receive no other distributions under this Plan on account of such Claim.

**4.16**  Class 16 – Convenience Claims B

(a)  Impairment and Voting.  Class 16 is impaired under the Plan. Holders of Class 16 Claims shall be entitled to vote to accept or reject the Plan.

(b)  Distributions.  Each holder of an Allowed Convenience Claim B, in full and final satisfaction of such Claim, shall receive Cash in an amount equal to 100% of such Allowed Convenience Claim (without interest) in three equal monthly installments, with the first payment due on the Initial Distribution Date, the second payment due 30 days after the Initial Distribution Date, and the third payment due 60 days after the Initial Distribution Date.

**4.17**  Class 17 – Equity Interests in TW Med

(a)  Impairment and Voting.  Class 17 is unimpaired under the Plan. Each holder of an Allowed Class 17 Equity Interest in TW Med is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)  Distributions.  Each record holder of an Equity Interest in TW Med shall retain its interest in TW Med.

**4.16**  Class 18 – Equity Interests in TGW

(a)  Impairment and Voting.  Class 18 is unimpaired under the Plan. Each holder of an Allowed Class 18 Equity Interest in TGW is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)  Distributions.  Each record holder of an Equity Interest in TGW shall retain its interest in TW Med.

4916-0589-5961, v. 2

# ARTICLE V

## MEANS FOR EXECUTION OF THE PLAN

**5.1** **Revesting of Property**.  Except as otherwise provided in this Plan, the Reorganized Debtors, as of the Effective Date, shall be vested with all of the assets of the Estates.

**5.2** **Bankruptcy Case Administration**.  Except as otherwise provided in this Plan, from and after the Effective Date and continuing through the date on which a final decree closing the Chapter 11 Cases is entered pursuant to section 350 of the Bankruptcy Code and Bankruptcy Rule 3022, the Reorganized Debtors shall possess the rights of a party in interest pursuant to section 1109(b) of the Bankruptcy Code for all matters arising in, arising under or related to the Bankruptcy Case.  In addition to the foregoing, for all matters arising under or related to the Bankruptcy Case, the Reorganized Debtors shall (i) have the right to appear and be heard on matters brought before the Bankruptcy Court or other courts of competent jurisdiction, (ii) be entitled to notice and opportunity for hearing, (iii) participate in all matters brought before the Bankruptcy Court, including but not limited to adversary proceedings, and (iv) receive notice of all applications, motions and other papers and pleadings before the Bankruptcy Court.

**5.3** **Continuation of Business Operations**.  From and after the Effective Date of the Plan, the Reorganized Debtors are authorized to continue their normal business operations and enter into such transactions as they deem advisable, free of any restriction or limitation imposed under any provision of the Bankruptcy Code, except to the extent otherwise provided in the Plan.

**5.4** **Continuation of Anti-Discrimination Provisions of Bankruptcy Code**.  A governmental unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, the Debtors, the Reorganized Debtors, or another Person with whom the Debtors or the Reorganized Debtors have been or are associated or affiliated, solely because of the commencement, continuation, or termination of the Bankruptcy Case or because of any provision of the Plan or the legal effect of the Plan, and the Confirmation Order will constitute an express injunction against any such discriminatory treatment by a governmental unit.

4916-0589-5961, v. 2

# ARTICLE VI

## IMPLEMENTATION OF THE PLAN

**6.1** **Method of Distributions Under the Plan.**

(a) <u>In General</u>. Subject to Bankruptcy Rule 9010, distributions under the Plan to be made by the Debtors to the holder of each Allowed Claim shall be mailed by first class mail, postage prepaid, to the address of such holder as listed on the Schedules as of the Distribution Record Date, unless the Debtors have been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or notice of transfer of claim filed by such holder that provides an address for such holder different from the address reflected on the Schedules. Provided, however, that the Debtors may in their sole discretion make distributions by ACH payment. The Debtors shall have no obligation to locate such holders whose distributions or notices are properly mailed but nevertheless returned. Distributions may be made under this Plan through payments directly from the Debtors.

(b) <u>Form of Distributions</u>. Any payment of Cash made by the Debtors pursuant to the Plan shall be made by check or ACH; <u>provided, however</u>, that after the occurrence of the Effective Date, the Debtors are not obligated to make any Cash payment under the Plan unless the payment exceeds ten dollars ($10); <u>provided, further</u>, that Cash equal to 100% of the distributions to which the holder of a Claim would be entitled under the Plan if the payment to such holder was less than or equal to ten dollars ($10) shall be maintained in a reserve (the "<u>Small Payment Reserve</u>") for the benefit of such holder until an aggregate of at least ten dollars is payable to such holder and at such time the holder shall receive a payment equal to 100% of the distributions to which it would otherwise be entitled.

(c) <u>Distributions to be on Business Days</u>. Any payment or distribution required to be made under the Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

(d) <u>Distributions to Holders as of the Distribution Record Date</u>. As of the close of business on the Distribution Record Date, the claims register shall be closed. The Debtors shall have no obligation to recognize any transfer of any Claims occurring after the close of business on the Distribution Record Date, and shall instead be entitled to recognize and deal for all purposes under the Plan with only those holders of record as of the close of business on the Distribution Record Date.

**6.2** **Objections to Disputed Claims.** Any objections to Claims against the Estate may be prosecuted by the Debtor or the Reorganized Debtors or any other party in interest. Except as otherwise provided by order of the Bankruptcy Court, the Reorganized Debtors or any other party in interest may file an objection to any Claim until 180 days after the Effective Date.

4916-0589-5961, v. 2

**6.3    Resolution of Claims.**  The Court shall have entered orders or there shall be agreements satisfactory to the Debtors concerning Claims, any Liens asserted by holders of Claims, and any interests in the Debtors (which may be orders included within the Confirmation Order) that, in the sole discretion of the Debtors are required for the feasibility and implementation of the Plan.

**6.4    Estimation of Claims.**  The Debtors or the Reorganized Debtors may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code, and the Bankruptcy Court shall have jurisdiction to estimate such Claim at any time, including, without limitation, during litigation concerning such Claim or an objection to such Claim.  The Debtors and the Reorganized Debtors shall be entitled to request that the Bankruptcy Court determine either the Allowed amount of such Claim or a maximum limitation on such Claim.  If the Bankruptcy Court determines the maximum limitation of such Claim, such determination shall not preclude the Debtors or Reorganized Debtors from pursuing any additional proceedings to object to any ultimate payment of such Claim.  If the Bankruptcy Court determines the Allowed amount of such Claim, the amount so determined shall be deemed the amount of the Disputed Claim for all purposes under this Plan.  All such proceedings are cumulative and not exclusive remedies.

**6.5    Disputed Claims Reserve.**

(a)    Establishment.  The Debtors shall maintain a reserve (the "Disputed Claims Reserve") equal to 100% of the distributions to which holders of Disputed Claims would be entitled under the Plan if such Disputed Claims were Allowed Claims or such lesser amount as required by a Final Order.

(a)    Distributions Upon Allowance of Disputed Claims.  The holder of a Disputed Claim that becomes an Allowed Claim subsequent to the Initial Distribution Date shall receive distributions of Cash from the Disputed Claims Reserve as soon as practical following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order.  Such distributions shall be made in accordance with the Plan based upon the distributions that would have been made to such holder under the Plan if the Disputed Claim had been an Allowed Claim on or prior to the Initial Distribution Date.  No holder of a Disputed Claim shall have any claim against the Disputed Claims Reserve with respect to such Claim until such Disputed Claim shall become an Allowed Claim, and no holder of a Disputed Claim shall have any right to interest on such Disputed Claim.

4916-0589-5961, v. 2

**6.6    Reversion of Unclaimed Checks.**  The amount of any checks issued for distributions under the Plan that remain uncashed for a period of one year after the date of such distribution shall revert and be vested in the Estate free and clear of any claim or interest of any holder of a Claim under the Plan.

**6.7    Effect of Convenience Class Election.**  By electing in writing convenience class treatment under the Plan, the holder of a General Unsecured Claim may elect to reduce the amount of such holder's Claim to the thresholds for treatment as Convenience Claims A or B Classes, only receive treatment as an Allowed Convenience Claim in the amounts specified in those Classes.  Holders of Convenience Claims A or B shall receive distributions as provided in Article IV of the Plan.  Such an election constitutes a waiver of the amount of such General Unsecured Claim in excess of the amounts specified in Convenience Claims A or B as applicable, and the holder of such Allowed Claim shall be deemed to release the Debtors from any and all liability for such excess amount.

**6.8    Retention and Preservation of Claim Objections and Causes of Action.**  Pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, upon entry of the Confirmation Order, the Debtors and the Reorganized Debtors' rights to object to all Claims and Interests asserted against the Estate and all of the Debtors' or Estates' Causes of Action, including without limitation: (1) the Debtors' Causes of Action asserted in any adversary proceeding, U.S. District Court litigation, state court proceeding, or any other proceeding  which is pending as of the Confirmation Date; (2) all Claims and Causes of Action disclosed in the Schedules which are incorporated herein by reference; (3) all Claims and Causes of Action described in the Disclosure Statement; (4) any Claims and Causes of Action contained in any contested matter or objection to Claim pending on the Confirmation Date; and (5) any and all other Claims and Causes of Action that the Debtors hold preconfirmation, including, but not limited to, Claims for unpaid accounts receivable, shall vest in the Estate.

Unless a Claim or Cause of Action against any Person is expressly waived or released in the Plan or any Final Order of the Bankruptcy Court, the Debtors expressly reserve such Claim or Cause of Action for later adjudication (including without limitation, Claims and Causes of Action not specifically identified or which the Debtors may presently be unaware or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time or facts and circumstances which may change or be different from those which the Debtors now believes to exist) and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claims preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Claims or Causes of Action upon or after the confirmation or consummation of the Plan based on the Disclosure Statement, the Plan, or the Confirmation Order, except where such Claims or Causes of Action have been expressly released in the Plan or any other Final Order of the Bankruptcy Court.

4916-0589-5961, v. 2

# ARTICLE VII

# VOTING ON THE PLAN

**7.1** **Voting of Claims**.  Each holder of an Allowed Claim in an impaired Class which retains or receives property under the Plan shall be entitled to vote separately to accept or reject the Plan and indicate such vote on a duly executed and delivered ballot as provided in such order as is entered by the Bankruptcy Court establishing certain procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan.

**7.2** **Nonconsensual Confirmation**.  If any impaired Class entitled to vote shall not accept the Plan by the requisite statutory majorities provided in Sections 1126(c) or 1126(d) of the Bankruptcy Code, as applicable, or if any impaired class is deemed to have rejected the Plan, the Debtor reserves the right (i) to confirm the Plan under Section 1129(b) of the Bankruptcy Code, and (ii) to amend the Plan in accordance with Section 11.6 hereof to the extent necessary to obtain entry of a Confirmation Order.

4916-0589-5961, v. 2

## ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**8.1** **Assumption of Executory Contracts and Leases**. The following executory contracts or unexpired leases (collectively, the "Assumed Contracts") are assumed on the Effective Date pursuant to Section 365 of the Bankruptcy Code in accordance with their terms, unless alternative terms are agreed to by the non-Debtor party or parties to such executory contract or unexpired:

| Vendor | Type | Contract # | Cure Amount | Payment of Cure |
|---|---|---|---|---|
| Les Olson | Equipment - Sharp/MX-C304W | | $399.32 | In full on Effective Date |
| Tmobile | | | $1,474.27 | In full on Effective Date |
| Imagenet Consulting LLC | Equipment - Canon Imagerunner ADV 500IF - Mobile Xray | 36071-02 | $2,605.99 | In full on Effective Date |
| Revco Leasing Company | Equipment - 2 Color Copiers | | $3,518.15 | 3 equal monthly installments beginning on Effective Date |
| Wells Fargo | Equipment - X-ray Machine-Kent Imaging | 301-0008860-003 | $4,620.02 | 3 equal monthly installments beginning on Effective Date |
| Capital Business Systems | Equipment - 4 Canon Copiers | | $5,580.13 | 3 equal monthly installments beginning on Effective Date |
| Porsche | | | $1,241.30 | In full on Effective Date |
| Magno Santos | | | $31,800.00 | 72 equal monthly installments beginning on Effective Date |

**8.2** **Assumption of Executory Contracts and Unexpired Leases; Deemed Cure Amount**. Other than the Assumed Contracts which are governed by Section 8.1 above, any other executory contract or unexpired lease which (i) has not expired by its own terms on or prior to the Confirmation Date, (ii) has not been assumed and assigned or rejected with the approval of the Bankruptcy Court on or prior to the Confirmation Date, or (iii) is not the subject of a motion to assume or reject which is pending at the time of the Confirmation Date, shall be deemed assumed as of the Effective Date. If there has been a default in an executory contract or unexpired lease, then the Reorganized Debtors shall cure or provide adequate assurance that it will promptly cure such default prior to its assumption of such lease or contract, as required under (and subject to the limitations of) Bankruptcy Code § 365(b), unless otherwise agreed to by the Reorganized Debtors and the counterparty to such lease or executory contract. Unless the counter-party to an unexpired lease or executory contract provides notice to

the Debtors on or before the Confirmation Date, any existing defaults shall be deemed cured as of the Effective Date, and the deemed cure amount for any such lease or contract is $0. Any dispute regarding a cure amount or the cure of any other existing default under an unexpired lease or executory contract shall be heard and determined by the Bankruptcy Court. Any claim for a cure amount or the cure of any other existing default under an assumed lease or executory contract must be filed with the Court and served on the Reorganized Debtors by no later than 30 days after the Confirmation Date.

**8.3** **Rejection of Executory Contracts**.  The Debtors do not intend to reject any executory contract or unexpired lease, with the exception of those contracts that the Debtors have already rejected pursuant to Court order. However, the Debtors reserve their right to do so by way of a motion filed prior to the Effective Date.

**8.4** **Post-Petition Agreements Unaffected By Plan**.  Except as otherwise expressly provided herein, nothing contained in the Plan shall alter, amend or supersede any agreements or contracts entered into by the Debtors after the Petition Date that were otherwise valid, effective and enforceable against the Debtors as of the Confirmation Date.  The Reorganized Debtors shall be deemed to be substituted for any Debtor in such contract or agreement, as applicable, and the Reorganized Debtors shall have all right, title and interest of the Debtor under such contract or agreement as if the Reorganized Debtors had been the original contracting party thereunder.

# ARTICLE IX

## CONDITIONS PRECEDENT TO EFFECTIVE DATE

**9.1** **Conditions Precedent to Effectiveness**.  The Plan shall not become effective, and the Effective Date shall not occur, unless and until the following conditions shall have been satisfied or waived:

(a)  the Confirmation Order, in form and substance reasonably acceptable to the Debtors, shall have been entered by the Bankruptcy Court and shall have become a Final Order;

(b)  all actions, other documents and agreements necessary to implement the Plan shall have been executed, delivered and, if necessary, properly recorded, and shall have become effective; and

(c)  the Estate shall have sufficient Cash to meet all Cash funding obligations under the Plan required to be made on the Effective Date.

**9.2** **Failure of Conditions Precedent**.  Notwithstanding anything in this Plan to the contrary, the conditions set forth in Section 9.1 above must be satisfied or waived on or before August 31, 2025.  In the event that the conditions set forth in Section 9.1 above are not satisfied on or before August 31, 2025, then the Plan shall be deemed

revoked and withdrawn, the Confirmation Order shall be deemed vacated, and Section 11.8 of the Plan shall apply.

**9.3** **Waiver of Conditions**.  The Debtors may waive one or more of the conditions precedent to the effectiveness of the Plan set forth in Section 9.1 above, except that the Debtors may not waive the condition that the Estate will have sufficient Cash to meet all payment and funding obligations under the Plan on the Effective Date.

# ARTICLE X

# RETENTION OF JURISDICTION

**10.1** **Retention of Jurisdiction**.  After the Effective Date, the Bankruptcy Court shall have exclusive jurisdiction of the following specified matters arising out of, and related to, the Bankruptcy Cases and the Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code:

(a)      to hear and determine any and all objections to the allowance of any Claims or any controversies as to the classification of any Claims or estimate any Disputed Claim;

(b)      to hear and determine any and all applications by Professionals for compensation and reimbursement of expenses;

(c)      to hear and determine any and all pending applications for the rejection or assumption of executory contracts and unexpired leases, and fix and allow any Claims resulting therefrom;

(d)      to enforce the provisions of the Plan subject to the terms thereof;

(e)      to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purpose and the intent of the Plan;

(f)      to determine any Claim or liability to a Governmental Unit which may be asserted as a result of the transactions contemplated herein;

(g)      to hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code; and

(h)      to determine such other matters as may be provided for in the Confirmation Order.

4916-0589-5961, v. 2

**10.2** **Closure of Case**.

(a) **Closing the Bankruptcy Case**. As soon as the Reorganized Debtors determine that there is no further need for administration of the Cases by the Bankruptcy Court, the Bankruptcy Cases shall be closed pursuant to 11 U.S.C. § 350 upon (i) the filing of a report and recommendation to close the Bankruptcy Case, (ii) after twenty-eight (28) days' notice to parties-in-interest, and (iii) the entry of an appropriate final decree and/or Order by the Court closing the Bankruptcy Case. Absent an order extending the time for entry of a final decree entered after notice and opportunity for hearing, a final decree closing the Bankruptcy Case shall be entered not later than 1 year after the Confirmation Date, and is anticipated to be entered as soon as the Effective Date. The Reorganized Debtors will comply with Local Rule 3022-1 in seeking entry of a final decree.

(b) **Post-Confirmation Payments to United States Trustee**. Until entry of an Order closing, dismissing or converting the Bankruptcy Case, any quarterly payments due to the office of the United States Trustee prior to the Effective Date of the Plan shall be paid in accordance with 28 U.S.C. § 1930(a)(6) by the Reorganized Debtors. No quarterly payments shall come due or be required after the Bankruptcy Case is closed.

(c) **Reopening Case**. At any time, the Reorganized Debtors may obtain entry of an order reopening the Bankruptcy Case to obtain any relief or order from the Bankruptcy Court consistent with section 10.1.

## ARTICLE XI

## MISCELLANEOUS

**11.1** **Continuation of Injunctions or Stays Until Effective Date**. All injunctions or stays provided for in the Bankruptcy Cases under Sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

**11.2** **Injunction Relating to the Plan**. As of the Effective Date, all Persons are hereby permanently enjoined from commencing or continuing, in any manner or in any place, any action or other proceeding, whether directly, indirectly, derivatively or otherwise against the Debtors or their Estates, on account of, or respecting any Claims, debts, rights, Causes of Action or liabilities discharged or treated pursuant to the Plan, except to the extent expressly permitted under the Plan. Upon entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective present, future, or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

4916-0589-5961, v. 2

**11.3**  **Bar Date for Administrative Claims**.  Except as otherwise provided in this Plan, all applications for allowance of Administrative Claims shall be filed with the Bankruptcy Court not later than thirty days of the Effective Date, other than (a) fees and expenses of Professionals Allowed pursuant to an Order of the Bankruptcy Court, and (b) fees and charges assessed against the Estate pursuant to 28 U.S.C. § 1930.  All Administrative Claims not filed within thirty days after the Effective Date shall be barred.  The deadline in the preceding sentence shall be construed and have the same force and effect as a statute of limitations.  The Reorganized Debtors shall provide notice to all creditors listed on the mailing matrix of this bar date within ten days after the Effective Date.  The Bankruptcy Court shall determine all Administrative Claims.

**11.4**  **Default of Plan**.  In the event of any default of the provisions of this Plan, a creditor or party in interest aggrieved by such default may provide written notice to the Reorganized Debtors.  The notice of default must describe with specificity the nature of the default alleged and the steps required to cure such default.  The Reorganized Debtors shall have thirty days after receipt of notice of default to cure such default.  If the Reorganized Debtors do not cure such default within thirty days after receipt of a notice of default, then a creditor or party in interest aggrieved by such default may apply to the Bankruptcy Court to compel compliance with the applicable provisions of the Plan.  The Bankruptcy Court, after notice and a hearing, shall determine whether a default occurred, and if a default occurred, whether such default has been cured.  Upon finding a material default, the Bankruptcy Court may issue such orders as may be appropriate, including an order compelling compliance with the pertinent provisions of the Plan.

**11.5**  **Setoffs**.  Except as otherwise provided in this Plan, nothing contained in this Plan shall constitute a waiver or release by the Estate of any rights of setoff the Estate may have against any Person.

**11.6**  **Amendment or Modification of the Plan**.  Alterations, amendments or modifications of the Plan may be proposed in writing by the Debtors at any time prior to the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of Sections 1122 and 1123 of the Bankruptcy Code, and the Debtor shall have complied with Section 1125 of the Bankruptcy Code.  The Plan may be altered, amended or modified at any time before or after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of Sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under Section 1129 of the Bankruptcy Code.  A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder.  The Debtors may, without notice to holders of Claims insofar as it does not materially and adversely affect the interests of any such holders, correct any defect or omission in this Plan and any exhibit hereto.

4916-0589-5961, v. 2

**11.7**  **<u>Severability</u>**.  If, prior to the Confirmation Date, any term or provision of the Plan is determined by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court may, upon the request of the Debtors, alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alternation or interpretation.  The Confirmation Order shall constitute a judicial determination that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable according to its terms.

**11.8**  **<u>Revocation or Withdrawal of the Plan</u>**.  The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date.  If the Debtors revoke or withdraw the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void.  In such event, nothing contained herein shall constitute or be deemed a waiver or release of any Claims by or against the Estates or any other Person or to prejudice in any manner the rights of the Debtors or any Person in any further proceedings involving the Estates.

**11.9**  **<u>Binding Effect</u>**.  The rights, duties and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

**11.10**  **<u>Notices</u>**.  All notices, requests and demands to or upon the Debtors shall only be effective if in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and confirmed, addressed as follows:

If to the Debtors:

TW Medical Group, LLC
Taylor G. Wright, P.C.
Attn: Zachary Paul
6405 South 3000 East
Suite 300
Salt Lake City, Utah 84121

With a copy to:

George Hofmann
Cohne Kinghorn, P.C.
111 East Broadway, 11th Floor
Salt Lake City, Utah 84111

- and -

4916-0589-5961, v. 2

Ted F. Stokes
2072 North Main Suite 102
North Logan, Utah 84321

**11.11 <u>Governing Law</u>**.  Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Utah, without giving effect to the principles of conflicts of law of such jurisdiction.

**11.12 <u>Post-Confirmation Fees, Final Decree</u>**.  The Debtors shall be responsible for the payment of any post-confirmation fees due pursuant to 28 U.S.C. §1930 and the filing of post-confirmation reports, until a final decree is entered.  The Debtors will file quarterly post-confirmation reports which will include: the total disbursements for the quarter, a comparison between the Plan payments made in each period and the payments projected under the Plan, and a complete list of creditors, payments, and time frames for payment.

**11.13 <u>Headings</u>**.  Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

**11.14 <u>Filing of Additional Documents</u>**.  On or before substantial consummation of the Plan, the Debtor shall file with the Bankruptcy Court any agreements or other documents that may be necessary or appropriate to effectuate and further evidence the terms and conditions hereof.

**11.15 <u>Inconsistency</u>**.  In the event of any inconsistency between the Plan and the Disclosure Statement, or any other instrument or document created or executed pursuant to the Plan, the terms of the Plan shall govern.

Dated:  February 20, 2025

| STOKES LAW PLLC | COHNE KINGHORN, P.C. |
|---|---|
| /s/ Ted F. Stokes | /s/ George Hofmann |
| Ted F. Stokes | George Hofmann |
| Attorneys for TGW | Emma L.A. Grissom |
| | Jeffrey L. Trousdale |
| | Attorneys for TW Med |

4916-0589-5961, v. 2

# EXHIBIT "A"

## SETTLEMENT AGREEMENT AND MUTUAL RELEASE

THIS Settlement Agreement and Mutual Release ("Agreement") made effective as of January ____, 2025 (the "Effective Date") is entered into between Cucumber Capital LLC ("CC" or "Buyer") on the one hand, and on the other hand, Taylor G Wright P.C ("Taylor G Wright P.C."), Innovation Medical Group ("Innovation Medical Group"), TW Medical Group LLC ("TW Medical Group"), Utah Foot and Ankle ("Utah Foot and Ankle"), TWZ Group LLC ("TWZ Group"), Innovation Wound Care ("Innovation Wound Care"), Wrightmed, PLLC ("Wrightmed"), Taylor G Wright, LLC ("Taylor LLC"), TW Medical Holdings, LLC ("TW Medical Holdings"), Innovation Surgical Specialties, LLC ("Innovation Surgical Specialties" together with Taylor G Wright P.C, Innovation Medical Group, TW Medical Group, Utah Foot and Ankle, TWZ Group, Innovation Wound Care, Wrightmed, Taylor LLC, and TW Medical Holdings, the "Merchant"), and Paul Zachary Boyd ("Boyd"), and Douglas Andrew Toole ("Toole"), and Taylor Gordon Wright ("Wright" together with Boyd and Toole, the "Guarantors" and collectively with the Merchant, the "Seller". Buyer and Seller shall be collectively referred to as the "Parties" and each as a "Party".

## RECITALS

WHEREAS, On or about September 5, 2024, Parties entered into a Sale of Future Receipts Agreement ("SFRA") whereby CC agreed to purchase Seller's future receivables having an agreed upon value of $337,275.00 (the "Purchased Amount");

WHEREAS, the Seller defaulted under the SFRA on or about October 28, 2024 (the "Default Date");

WHEREAS, TW Medical Group LLC, and Taylor G. Wright, P.C. (dba Innovation Medical Group and Utah Foot and Ankle) (together, the "Bankruptcy Parties") filed for Chapter 11 bankruptcy protection in the Bankruptcy Court for the District of Utah (the "Bankruptcy Court"), Case Numbers 24-25495 and 24-25496, respectively, filed on or about October 23, 2024 (the "Bankruptcy Filings");

WHEREAS, Cucumber Capital LLC (the, "Plaintiff") filed the following against TWZ Group, Innovation Wound Care, Wrightmed, Taylor LLC, TW Medical Holdings, Innovation Surgical Specialties, Boyd, Toole and Wright (the, "Defendants"): (1) Summons and Complaint against Defendants, jointly and severally, in the amount of $289,292.84 on October 29, 2024 in the New York State Supreme Court, County of Nassau, in the matter captioned *Cucumber Capital LLC v. TWZ Group LLC, Innovation Wound Care, Wrightmed, PLLC, Taylor G Wright, LLC, TW Medical Holdings, LLC, Innovation Surgical Specialties, LLC, and Paul Zachary Boyd, and Douglas Andrew Toole, and Taylor Gordon Wright* under Index No. 619028/2024 (the "Complaint");

WHEREAS, the Parties wish to settle all disputes between them including, without limitation, Seller's obligations to Buyer pursuant to the SFRA, and Defendants' obligations to Plaintiff pursuant to the Complaint;

NOW, THEREFORE, in consideration of the releases and promises set forth below, and other valuable consideration, the sufficiency of which is hereby acknowledged by all Parties, the Parties agree as follows:

1. **Recitals**.

   The foregoing recitals are true and correct and are made a part of this Agreement.

2. **Settlement Amount and Payments**.

   Plaintiff hereby agrees to accept the sum of Three Hundred Ten Thousand Dollars and 00/100 Cents (**$310,000.00**) (the "Settlement Amount") in full satisfaction of any and all claims Plaintiff may have against Defendants including, without limitation, the Seller's obligations to Buyer pursuant to the SFRA. The Settlement Amount shall be subject to 12% annual interest. ***There shall be no prepayment penalties.***

3. **Settlement Payments**.

   Shall be made to the account of the attorney for Plaintiff.

   |  |  |
   |---|---|
   | Account Name: | The Law Office of Jason Gang, PLLC |
   | Address: | 1245 Hewlett Plaza, #478, Hewlett, NY 11557 |
   | Bank: | JPMorgan Chase Bank, N.A. |
   | Routing Number: | 021000021 |
   | Account Number: | 518477289 |

4. **Stay and Discontinuance.**

   For so long as full compliance with the terms of this Agreement continues, this Agreement shall cause Plaintiff to stay any further legal action and/or collection efforts other than those specified within this Agreement. Upon Plaintiff's receipt of the Settlement Amount in full, Plaintiff shall file a Notice of Discontinuance *with prejudice* in the Complaint referenced in the above recitals and terminate all UCC filings and liens.

5. **Bankruptcy Court Approval**. The Parties acknowledge that the Bankruptcy Parties' obligations under this Agreement are subject to approval of the Bankruptcy Court. The Bankruptcy Parties agree to incorporate this reference into their Plan of Reorganization. Subject to approval of the Bankruptcy Court, the Settlement Amount shall be paid by the Bankruptcy Parties as part of their Chapter 11 bankruptcy plan. Payments shall begin following confirmation of the bankruptcy plan in accordance with the terms therein.

6. **Satisfaction of the SFRA.**

   Upon execution of this Agreement, and Buyer's receipt of the Settlement Amount in full, Buyer shall furnish Seller with a zero-balance letter, and shall file a release or satisfaction of any proof of claim filed by Buyer in the Bankruptcy Court against the Bankruptcy Parties.

7. **Default**.

   In the event that Defendants default under any of the payments and/or other obligations, this Agreement, and the releases contained herein in favor of the Defendants, shall become null and void and Plaintiff shall be entitled to make an application to the Nassau County Clerk pursuant to CPLR 3215(i) for a default judgment in the sum of $289,292.84 plus attorney's fees at the rate

of 20.00% equaling $57,858.57, for a total of **$347,151.41** ("Total Due" plus interest at 9% from October 28, 2024, plus all additional costs and disbursements allowed by statute upon entry of Judgment) less payments made pursuant to this Agreement. It shall be sufficient for such application to be supported by an attorney affirmation attesting to the default hereunder and the amount for which judgment should be entered.

8. **Waiver and Release by Plaintiff**.

Effective upon execution of this Agreement and Buyer's receipt of the Settlement Amount in full, Buyer, as well as its parents, subsidiaries, affiliates, predecessors, successors, and assigns, and all of their respective officers, directors, employees, shareholders, members, managers, trustees, agents, attorneys, accountants, family members, and partners, in their corporate and individual capacities, fully and unconditionally waive, release and forever discharge all claims, counterclaims, actions, causes of action, lawsuits, damages, debts, defenses, sums of money, accounts, rights, interests, injuries, attorney's fees, costs, compensation, assessments, reimbursements, late fees, interest, covenants, controversies, agreements, promises, judgments, executions, demands, reckonings, bonds, bills, specialties, trespasses and variances of any nature whatsoever which they or their agents, servants and legal representatives, subsidiaries, affiliates, successors, and assigns ever had, now have, or hereafter may have against Seller, as well as their parents, subsidiaries, affiliates, predecessors, successors, and assigns, and all of their respective officers, directors, employees, shareholders, members, managers, trustees, agents, attorneys, accountants, and partners, in their corporate and individual capacities, whether known or unknown, whether now existing or which may hereafter arise, which they had, have, claim or may claim to have against Seller including, without limitation, the liability of Seller to Buyer pursuant to the SFRA. *** This release shall in no way affect Defendant's obligations to Plaintiff pursuant to this Agreement.***

9. **Waiver and Release by Seller**.

Effective upon the full execution of this Agreement, Seller, for themselves as well as their parents, subsidiaries, affiliates, predecessors, successors, and assigns, and all of their respective officers, directors, employees, shareholders, members, managers, trustees, agents, attorneys, accountants, and partners, in their corporate and individual capacities, fully and unconditionally waives, releases and forever discharges all claims, counterclaims, actions, causes of action, lawsuits, damages, debts, defenses, sums of money, accounts, rights, interests, injuries, attorney's fees, costs, compensation, assessments, reimbursements, late fees, interest, covenants, controversies, agreements, promises, judgments, executions, demands, reckonings, bonds, bills, specialties, trespasses and variances of any nature whatsoever which it or its agents, servants and legal representatives, subsidiaries, affiliates, successors, and assigns ever had, now have, or hereafter may have against Buyer, as well as its parents, subsidiaries, affiliates, predecessors, successors, and assigns, and all of their respective officers, directors, employees, shareholders, members, managers, trustees, agents, attorneys, accountants, and partners, whether known or unknown, whether now existing or which may hereafter arise, which it had, has, claims or may claim to have against Buyer. *** This release shall in no way affect Plaintiff's obligations to Defendants pursuant to this Agreement.***

10. **No Admission of Wrongdoing**

The Parties agree that neither this Agreement nor the furnishing of the consideration for this Agreement shall be deemed or construed at any time for any purpose as an admission by any Party of any liability or unlawful conduct of any kind.

11. **Legal Fees**.

Each Party shall bear their own legal fees, costs and expenses in connection with the negotiation, preparation and execution of this Agreement.

12. **Benefit**.

This Agreement shall be binding upon and inure to the benefit of the Parties hereto, and their respective successors, transferees and assigns.

13. **Miscellaneous**.

(a) Entire Agreement.  This Agreement constitutes the entire agreement between the Parties as it relates to the issues agreed to in this Agreement, and supersedes all negotiations, prior promissory notes and contracts, preliminary agreements and all prior and contemporaneous discussions and understandings of the parties in connection with the subject matters hereof. Except as otherwise provided herein, no covenant, representation or condition not expressed in this Agreement, or in an amendment hereto, shall be binding upon the Parties hereto or shall affect or be effective to interpret, change or restrict the provisions of this Agreement.

(b) Amendments.  No amendment, change or modification of any of the terms, provisions or conditions of this Agreement shall be effective unless made in writing and signed by the Party against whom such amendment, change or modification is sought to be enforced.  Waiver of any provision of this Agreement shall not be deemed a waiver of future compliance therewith and such provisions shall remain in full force and effect.

(c) Severability.  In the event any provision (or part thereof) of this Agreement is held invalid, illegal or unenforceable, in whole or in part, the remaining provisions of this Agreement shall not be affected thereby and shall continue to be valid and enforceable.

(d) Captions. The titles or captions of sections and paragraphs in this Agreement are provided for convenience of reference only, and shall not be considered a part hereof for purposes of interpreting or applying this Agreement.  Such titles or captions do not define, limit, extend, explain or describe the scope or extent of this Agreement or any of its terms or conditions.

(e) Counterparts. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which shall together constitute one and the same instrument.

(f) Gender and Number.  Words or phrases herein shall be construed as in the singular or plural number and as masculine, feminine or neuter gender, according to the context.

(g) Binding Effect.  This Agreement shall not be assigned in whole or in part by any of the Parties hereto without the prior written consent of the other Party hereto.

(h) Construction.  The language used in this Agreement shall be deemed to be language chosen by all Parties hereto to express their mutual intent, and no rule or principle of strict construction against any party shall apply to any term or condition of the Agreement.

(i) Governing Law and Jurisdiction.  The validity, construction, and enforceability of this Agreement shall be governed and controlled by the application of the laws of the State of New York. The Parties expressly agree that the court in which the Action was filed shall retain jurisdiction over the Parties to enforce the provisions of this Agreement.  The prevailing party in any action commenced to enforce or interpret the terms of this Agreement is entitled to recover from the other Party all reasonable attorney's fees and costs incurred in the action at both the trial and appellate levels, including but not limited to, those incurred in determining the reasonableness of such an award.

(j) No Reliance.  Except as otherwise stated in this Agreement, the Parties acknowledge that they have not relied upon any statements or representations made by any other Party; that they have carefully read the foregoing Agreement and know the contents hereof; and that they have executed this Agreement as their own free act.

(k) Consultation with Counsel.  BY EXECUTING THIS AGREEMENT, THE PARTIES EXPRESSLY ACKNOWLEDGE: (A) EACH HAS HAD A REASONABLE TIME TO REVIEW THIS AGREEMENT BEFORE SIGNING; (B) EACH HAS READ THIS AGREEMENT CAREFULLY AND FULLY UNDERSTANDS ITS TERMS AND CONDITIONS, (C) EACH FREELY, VOLUNTARILY AND KNOWINGLY RELEASES AND WAIVES CLAIMS UNDER THIS AGREEMENT IN EXCHANGE FOR CONSIDERATION, (D) EACH ACKNOWLEDGES THAT THE CONSIDERATION RECEIVED CONSTITUTES GOOD AND VALUABLE CONSIDERATION SUPPORTING THE OBLIGATIONS AND DUTIES IMPOSED BY THIS AGREEMENT, AND (E) EACH HAS BEEN ADVISED BY LEGAL COUNSEL AS TO THE MEANING AND CONSEQUENCES OF THE RELEASE AND WAIVER OF CLAIMS UNDER THIS AGREEMENT AND THE MEANING AND CONSEQUENCES OF EACH OF THE OTHER TERMS AND PROVISIONS OF THIS AGREEMENT.

(l) Agreement to Further Cooperate.  Each Party represents that they will cooperate with each other to fulfill the terms and conditions of this Agreement. Notwithstanding the method of transmission, this Agreement is not valid unless executed by both Plaintiff and Seller and, until executed by the Plaintiff, shall not constitute an offer or acceptance.


REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK

**IN WITNESS WHEREOF, the Parties hereto have executed this Agreement as of the dates written below.**

| CUCUMBER CAPITAL LLC | TAYLOR G WRIGHT P.C<br>INNOVATION MEDICAL GROUP<br>TW MEDICAL GROUP LLC<br>UTAH FOOT AND ANKLE,<br>TWZ GROUP LLC,<br>INNOVATION WOUND CARE,<br>WRIGHTMED, PLLC,<br>TAYLOR G WRIGHT, LLC,<br>TW MEDICAL HOLDINGS, LLC,<br>INNOVATION SURGICAL SPECIALTIES, LLC |
|---|---|
| _____<br><br>Print name: _____<br><br>Title: _____<br><br>Date: January ___, 2025. | <br><br>_____<br><br>Print name: _____<br><br>Title: _____<br><br>Date: January ___, 2025.<br><br>**PAUL ZACHARY BOYD**<br><br>_____<br><br>Date: January ___, 2025.<br><br>**DOUGLAS ANDREW TOOLE**<br><br>_____<br><br>Date: January ___, 2025.<br><br>**TAYLOR GORDON WRIGHT**<br><br>_____<br><br>Date: January ___, 2025. |

## VERIFICATION 1

Signer hereby acknowledges that Signer has read and understands the terms of this Agreement, is aware of Signer's right to be represented by an attorney and/or obtain legal counsel relative to this action and the terms of this Agreement, and knowingly and voluntarily sign this Agreement.


_____

**Paul Zachary Boyd**, individually and on behalf of
Taylor G Wright P.C, Innovation Medical Group, TW Medical Group LLC, Utah Foot and Ankle, TWZ Group LLC, Innovation Wound Care, Wrightmed, PLLC, Taylor G Wright, LLC, TW Medical Holdings, LLC, and Innovation Surgical Specialties, LLC


STATE OF _____ )

COUNTY OF _____ ) SS.:


On _____ _____ , 2 0 _ _   before me, the undersigned, a Notary Public in and for said State, personally appeared _____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacit(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.


_____

(Seal)                    NOTARY PUBLIC

VERIFICATION 2

Signer hereby acknowledges that Signer has read and understands the terms of this Agreement, is aware of Signer's right to be represented by an attorney and/or obtain legal counsel relative to this action and the terms of this Agreement, and knowingly and voluntarily sign this Agreement.


_____

**Douglas Andrew Toole**, individually and on behalf of
Taylor G Wright P.C, Innovation Medical Group, TW Medical Group LLC, Utah Foot and Ankle, TWZ Group LLC, Innovation Wound Care, Wrightmed, PLLC, Taylor G Wright, LLC, TW Medical Holdings, LLC, and Innovation Surgical Specialties, LLC


STATE OF _____)

COUNTY OF _____) SS.:


On _____ _____ , 2 0 _ _   before me, the undersigned, a Notary Public in and for said State, personally appeared _____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacit(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.


_____
(Seal)                                    NOTARY PUBLIC

Signer hereby acknowledges that Signer has read and understands the terms of this Agreement, is aware of Signer's right to be represented by an attorney and/or obtain legal counsel relative to this action and the terms of this Agreement, and knowingly and voluntarily sign this Agreement.

_____

**Taylor Gordon Wright**, individually and on behalf of
Taylor G Wright P.C, Innovation Medical Group, TW Medical Group LLC, Utah Foot and Ankle, TWZ Group LLC, Innovation Wound Care, Wrightmed, PLLC, Taylor G Wright, LLC, TW Medical Holdings, LLC, and Innovation Surgical Specialties, LLC

STATE OF _____)

COUNTY OF _____) SS.:

On _____ _____ , 2 0 _ _   before me, the undersigned, a Notary Public in and for said State, personally appeared _____ personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacit(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____

(Seal)                                     NOTARY PUBLIC